[Civ. No. 7886.   Third Dist.   July 30, 1951.]

JOSEPH FEIGIN, Plaintiff and Appellant, v. STEPHEN KUTCHOR, Defendant and Appellant.

Joseph A. Brown for Plaintiff and Appellant.

Mazzera, Snyder & DeMartini for Defendant and Appellant.

SCHOTTKY, J. pro tem.—Plaintiff filed a complaint containing two causes of action, the first being in claim and delivery to recover possession of a compressor and its attachments, or the value thereof; and the second being to recover for the alleged conversion of certain lumber, plumbing fixtures and materials, gasoline, oil and dynamite fuses and caps. The reasonable value of the compressor and attachments was alleged to be $2,500, and the value of the materials was alleged to be $2,117.

The answer denied the plaintiff was the owner of the compressor and alleged that defendant owned it "by reason of the purchase made by the defendant from one Ralph Max-

well on April 24, 1948, the same being covered by a bill of sale on said date.'' The original answer, signed and filed by defendant in propria persona, did not deny that plaintiff was entitled to the possession of the compressor, although the complaint had alleged that plaintiff was both the owner and entitled to the possession thereof. All allegations in plaintiff's second cause of action were denied. An amendment to the answer, subsequently prepared and filed by defendant's present counsel, set up counterclaims for work, labor and services performed by defendant for plaintiff in the amount of $360 and a storage charge of $32 for materials stored on defendant's property.

The case proceeded to trial on January 20, 1949, and all phases of the controversy between plaintiff and defendant relating to the ownership and right to possession of all of said property were fully covered by the testimony introduced. At no time during the trial, or prior thereto, did counsel for plaintiff indicate by motion, objection, statement, or otherwise, that plaintiff's right to possession was not an issue because of the failure of the answer to deny it.

As to the first cause of action the court found that defendant owned the compressor and was entitled to the possession of it, ''subject, however, to Plaintiff's right to use said compressor and attachments in the exploration, development and exploitation of the said Williams Mine during the life of his said mining venture. . . .'' The court also found that ''Plaintiff has not used said compressor or attachments in the exploration, development or exploitation of the said Williams Mine or otherwise in connection with said mining venture at any time since January 1, 1948; that Plaintiff has not done any work of any sort at Williams Mine since January 1, 1948, and has abandoned his said mining venture at said Williams Mine; that in April of 1948, and at the time said compressor was removed from said Williams Mine by Defendant, the said Defendant desired to use said compressor for his own bona fide temporary uses elsewhere and so removed said compressor for such purpose.''

As to the second cause of action the court found that the materials were stored upon defendant's property, and that defendant had not converted them to his own use, but they were in the possession of defendant for the use of plaintiff in his mining venture. The court found that defendant used for his own purposes 220 gallons of gasoline and 5 gallons of oil, of the value of $45.93.

The court allowed defendant $32 as the reasonable amount for storage of plaintiff's materials. The remaining allegations of the counterclaim were found to be false.

Plaintiff has appealed from the judgment entered in accordance with said findings, and defendant has appealed from that portion of the judgment denying relief on his counterclaims for work, labor and services. We shall first consider the appeal of plaintiff.

### Plaintiff's Appeal

As his first ground for reversal of the judgment, plaintiff contends that he was entitled to judgment on the pleadings on the first count in claim and delivery of the compressor because defendant in his first answer did not deny the allegation that plaintiff was entitled to its immediate possession. Plaintiff points out, correctly, that an action in claim and delivery is a possessory action, and that one entitled to possession is entitled to maintain the action even though he is not vested with the legal title.

Defendant admits the defect in the answer, but points out that plaintiff did not take advantage of the defect by demurrer, motion for judgment on the pleadings, objection to evidence, or otherwise. A reading of the transcript shows that the parties considered the right to possession as one of the issues, and that the issue was fully covered by the evidence. Defendant states that plaintiff did not complain of the defect until his opening brief was filed with the trial court on March 14, 1949, after submission of the case, and this is admitted by plaintiff. These briefs are not in the record on appeal, but defendant states that in the reply brief to the trial court he asked leave to amend the answer, and this seems to be supported by the fact that the second amendment to the answer denying plaintiff's right to possession was filed with the clerk on March 29, 1949. A "Memo Decision" filed May 13, 1949, contained the following order: "It is further ordered that Defendant's Second Amendment to Answer be filed." Judgment was entered December 30, 1949.

Plaintiff argues also that the trial court erred in permitting the filing of defendant's Second Amendment to Answer denying plaintiff's right to possession, but there is no merit in this contention, for as stated in 21 California Jurisprudence 193, "A court may, in its discretion, permit amendment of pleadings . . . after evidence is all in, pending argument of counsel, and even after submission of the cause. It is unusual to find it necessary to amend the complaint after a

case has been submitted, but there is, under the power given by section 473 of the Code of Civil Procedure, no limitation as to the time before judgment entered when the power of the court ceases." And as stated in *Andrus* v. *Smith,* 133 Cal. 78, at page 81 [65 P. 320] : "The court did not err in allowing plaintiff to amend her complaint after the cause was tried and submitted, but before findings had been filed or judgment given. The submission was set aside, and defendant allowed to answer the amended complaint and to introduce further evidence. This was the correct practice, was in furtherance of justice, and for the purpose of having the case disposed of upon its merits." And in *Burrows* v. *Burrows,* 18 Cal.App.2d 275 [63 P.2d 1135], the court said, at page 279: "Under the provisions of section 470 of the Code of Civil Procedure the trial court is invested with discretionary power to permit and even to order the pleadings of the parties to be amended at any stage of the trial of the cause, and even after its submission, so as to make such pleadings conform to the proofs; and it has been uniformly held that this discretion will not be interfered with upon appeal except in cases of its manifest abuse." (Citing cases.) See, also, *Valencia* v. *Shell Oil Co.,* 23 Cal.2d 840, 848 [147 P.2d 558].

As hereinbefore stated the questions of title and right of possession were fully gone into by both parties at the trial, and counsel for plaintiff did not at any time during the trial contend that it was not an issue. Had he done so the trial court would undoubtedly have permitted the amendment. If counsel for plaintiff was aware of such omission in the answer, it was his duty as an officer of the court to make an objection or motion on that ground; if he was unaware of it until after the trial was concluded and proceeded to try the case as though the right of possession were an issue, he should not now question the court's undoubted right to permit the amendment. A trial is more than a contest between opposing counsel, and a trial judge is more than an umpire in a battle of wits between opposing counsel. The administration of justice is not improved by slavish adherence to technical rules of pleading, but counsel and court should cooperate in having the pleadings so shaped that the controversy between the parties litigant may be fully and fairly determined upon its merits and in accordance with substantial justice.

As we view the matter, upon the record here, it was not only within the power of the court to permit the amendment, but it was its duty to do so.

■ Plaintiff next contends that the uncontradicted evidence shows that the defendant unlawfully took and detained the compressor, and he makes an extended argument in an effort to show that the record does not sustain the findings of the trial court. If the judgment had been in favor of plaintiff his argument upon this point would be very helpful in pointing evidence in support thereof, but in view of the finding in favor of defendant upon this issue, the argument of appellant is but an argument as to the weight of the evidence. And as was said in *Juchert* v. *California Water Service Co.*, 16 Cal.2d 500, at page 503 [106 P.2d 886]: "As is always true on such appeals, all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences must be indulged in to uphold the verdict, if possible. It is ·elementary that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. And when two or more inferences can reasonably be deduced from the facts, the reviewing court is without power to substitute its deductions for those of the jury or trial court. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Treadwell* v. *Nickel*, 194 Cal. 243 [228 P. 25]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 P. 1157]; *Wing* v. *Kishi*, 92 Cal.App. 495 [268 P. 483].)"

The record shows that plaintiff was engaged in mining activities in Tuolumne County. Defendant worked for the plaintiff at various mines before their venture at the Williams Mine. According to defendant, the parties were to have a 50-50 interest in the Williams Mine. Defendant was to operate the mine, and plaintiff agreed to furnish materials, and an extra man after the tunnel was cleaned out by the defendant. Plaintiff testified that he was informed by Mr. Williams, the owner of the mine, and by the defendant that the tunnel was 250 feet long, but when defendant cleaned the tunnel it was discovered that it was only 50 feet in length. Plaintiff had the mine surveyed on October 12, 1947. The survey disclosed that the end of the tunnel was 500 feet from the ore. Plaintiff testified that he abandoned the venture after receiving the results of the survey; and that the contract prepared by him was not signed for the reason that the tunnel was not as long as it had been represented to be.

Defendant testified that after the survey was made, the parties agreed to continue mining operations on a 50-50 basis and plaintiff agreed to furnish a man to assist in the work; that defendant worked six weeks after the survey and plaintiff did not furnish the extra man; and that he stopped work at the end of the six weeks' period because plaintiff did not furnish a written contract or partnership agreement as he had agreed.

The evidence appears to support the finding that defendant owns the compressor. Mr. Maxwell, original owner of the compressor, testified that he talked with plaintiff in the early part of September, 1947, and agreed to permit plaintiff to use the compressor at the Williams Mine if he would repair it, but that nothing was said about plaintiff's using it at other mines. Plaintiff spent $1,200 repairing the compressor before placing it on the Williams Mine property. Mr. Maxwell testified that he sold the compressor to the defendant in April, 1948, subject to plaintiff's right to use it at the Williams Mine. Plaintiff testified that Maxwell agreed to give him the compressor if he would repair it and allow Maxwell to use it on temporary jobs. The compressor was installed at the mine but was never operated.

The trial judge was fully justified in concluding that the evidence indicated that plaintiff's only interest in the compressor was the right to use it at the Williams Mine. The evidence shows that he was not deprived of that use. As noted above, plaintiff testified that he abandoned the operation after the survey in October, 1947. Mr. Williams, the owner of the mine, testified that he had consulted plaintiff after November, 1947, to determine whether plaintiff intended to continue operating the mine; and that in April, 1948, plaintiff gave him permission to use the tunnel as a storage dam for irrigating purposes.

Plaintiff contends further that defendant was a partner of plaintiff in the mining property and therefore stood in such a fiduciary relationship to plaintiff that he could not purchase the equipment and set up a claim thereto against plaintiff. This argument is, of course, based on the assumption that we must accept plaintiff's version of the evidence, but, as pointed out by defendant, and as sustained by the record, the Williams mining enterprise was stopped and the partnership relation ended in October or November, 1947, and the compressor was not purchased or removed by defendant until April, 1948. There is no merit in this contention.

Equally without merit is plaintiff's attack upon the court's finding that the materials described in plaintiff's second cause of action were stored upon defendant's property and had not been converted by defendant, but that defendant had used some gasoline and oil for which he was indebted to plaintiff in the sum of $45.93, and that the remainder thereof had been sold by plaintiff to defendant and paid for by defendant. The record fully supports this finding, as it also supports the finding that plaintiff was indebted to defendant in the sum of $32 for storage.

## Defendant's Appeal

█ Defendant's appeal is from that part of the judgment denying relief on his counterclaim for work and services. It is contended that he is entitled to be compensated for the six weeks of work performed after the mine survey. Defendant relies upon the rule that where one party to a contract refuses to go ahead with his part of the contract, the other is entitled to treat the contract as rescinded and to bring suit in *quantum meruit* for the reasonable value of services actually rendered.

Defendant alleged, in substance, in his counterclaim, that he performed labor for plaintiff at plaintiff's instance and request, of the value of $360, and also that plaintiff became indebted to him in the sum of $392 upon an account stated. The trial court found that these allegations were not true.

The evidence in this case was highly conflicting but it was the duty of the trial court to weigh the evidence and resolve the conflicts. The learned trial judge, who had the benefit of many years of experience upon the trial bench, and who had doubtless heard testimony in many similar cases, no doubt concluded that plaintiff and defendant were engaged in a partnership mining venture up to the time it was abandoned, and that such abandonment was for the benefit of both parties, and that under such circumstances defendant was not entitled to recover from plaintiff for labor that defendant had performed up to the time of the abandonment of the venture. We believe that the record fully sustains the findings of the trial court and that the rule of law relied upon for a reversal of the judgment as to the counterclaim is inapplicable to the facts as found by the court.

In view of the foregoing the judgment is affirmed, respondent Kutchor to recover his costs on appeal.

Adams, P. J., and Van Dyke, J., concurred.