[Civ. No. 9807.   Third Dist.   June 16, 1960.]

KARL V. KING, Respondent, v. PIERRE ETCHEBARREN, Appellant.

*Assigned by Chairman of Judicial Council.

Garcia & Wong and Louis Garcia for Appellant.

Chargin & Briscoe and John L. Briscoe for Respondent.

SCHOTTKY, J.—Pierre Etchebarren has appealed from a judgment in favor of Karl V. King in an action brought by King to recover money due on an account.

In 1948 after conferring with certain California ranchers King sought to help alleviate the shortage of qualified sheepherders by bringing qualified sheepherders to California from Europe. In order to do this it became necessary for him to seek changes in the immigration laws in order for certain sheepherders to qualify for admission into the United States. In many instances King advanced the necessary transportation costs for the immigrants. The costs and expenses incurred in lobbying were prorated among the sheepherders who were admitted under the revised laws. In addition, King charged each sheepherder $150 as attorney's fees to reimburse him for his time and effort.

Mr. King went to Europe where, acting through an agent who spoke the language of the country where the interview was being conducted, he interviewed the prospective admittees. The agent was instructed to advise each sheepherder that the rancher by whom he was employed would deduct the costs due King from the wages earned by him. Etchebarren was one of the sheepherders whose travel expenses were advanced by King.

Etchebarren came to the United States in 1951. King was unable to locate him until 1957, at which time he wrote a letter to him in which he asked him for payment. Etchebarren in his reply stated:

. . . . . . . . . . . . . . .

"My intentions with regard to payment for my immigration are and always have been to accept fully this responsibility. However, I have never had any knowledge of my benefactor in this instance, for at no time was the name of the person who arranged passage for me and those like me, afforded us.

, "If you are that person, you are certainly entitled to compensation for actual expenses incurred in connection with my immigration. In order that I may be assured that you are, in fact, the person to whom I am indebted, I should very much appreciate it if you would furnish me with copies of receipts of payments made in this regard, and any other information which may establish your identity to my full satisfaction."

King then wrote Etchebarren giving him the requested information.

King in 1954, prior to locating Etchebarren, filed the instant action against Etchebarren and many others. The cause of action relating to Etchebarren alleged that Etchebarren was indebted to King in the sum of $904.48 upon a mutual, open and current account, with interest from May 13, 1952, and this indebtedness was incurred within four years prior to the filing of the complaint.

After Etchebarren failed to pay the action was prosecuted. The answer filed denied the allegations of the complaint and also raised the question of the statute of limitations. At the trial a loose-leaf ledger sheet was introduced which read in part:

```
"Name   Jean Ornague (Iriart)   Account No. T.W.A. 187
  Address  759 Broadway, San Fran. Cal.
           Etchebarren
           Pierre
  7/21/51  TWA 152-20396
           Paris/NY/SF                  547.40
           Head Tax                       8.00
           H & A Insurance               17.50
             Expenses     $181.58
             Fee           150.00        331.58
                                       _____
                                       $904.48"
```

King, who was the only witness who testified at the trial, testified that regular books of account were kept in connection with the bringing of the Basque and French sheepherders to the United States and that the account relating to Etchebarren was kept in the regular course of business. Etchebarren's counsel objected to the introduction of the ledger sheet on the ground that no proper foundation had been established for the support of this account, which objection was overruled. Etchebarren did not testify at the trial.

The trial court found that the services were performed for Etchebarren by King and that the expenditures were made as set forth in the account, and "Defendant's indebtedness to Plaintiff was set forth in a book account, a photocopy of a page of which is attached hereto as Exhibit '1'." Judgment was entered in favor of plaintiff as prayed for and this appeal followed.

Appellant makes the following contentions: (1) The court erred in admitting the ledger sheet as a mutual, open and current account because it does not constitute one. (2) There is no evidence of a mutual account. (3) There was a fatal variance between the pleading and proof—i.e., King pleaded a mutual account and the court found a book account. (4) The action was barred by the two-year statute of limitations for an oral account. (Code Civ. Proc., § 339, subd. 1.)

None of these contentions can be sustained. ▋ The ledger sheet was offered and admitted as the account covering the indebtedness of appellant to respondent. The only objection made to its introduction in evidence was that "there has been no proper foundation established for the support of this account." The ledger sheet was part of the account kept by respondent in the regular course of business, and while appellant is perhaps correct in stating that it was not a mutual, open and current account, it was nevertheless a book account, as the court found that it was. ▋ As stated in *Egan* v. *Bishop*, 8 Cal.App.2d 119, at page 122 [47 P.2d 500]:

"It is claimed by appellant that these records were insufficient to constitute a single book account and that they in reality show a great number of book accounts, wholly unrelated to each other. We do not accede to this view. The law does not prescribe any standard of bookkeeping practice which all must follow, regardless of the nature of the business of which the record is kept. We think it makes no difference whether the account is kept in one book or several so long

as they are permanent records, and constitute a system of bookkeeping as distinguished from mere private memoranda. The records were sufficient to support a cause of action on a book account." (See also *Gardner* v. *Rutherford*, 57 Cal.App. 2d 874 [136 P.2d 48].)

No doubt, if appellant had objected on the ground that there was a variance between the pleading and the proof, the court would have permitted an amendment to the complaint; but in view of the fact that it was understood by both parties that respondent was seeking to recover from appellant for services and expenses due respondent for bringing appellant to the United States, we do not believe that any prejudicial error resulted. Appellant's contentions are hypertechnical, and as we said in *Feigin* v. *Kutchor*, 105 Cal. App.2d 744, at page 748 [234 P.2d 264] : ". . . The administration of justice is not improved by slavish adherence to technical rules of pleading, but counsel and court should cooperate in having the pleadings so shaped that the controversy between the parties litigant may be fully and fairly determined upon its merits and in accordance with substantial justice."

The evidence was sufficient to support the court's findings that appellant's indebtedness to respondent was set forth in a book account and that the action was not barred by the statute of limitations. Section 337, subdivision 2, of the Code of Civil Procedure provides in part that "[a]n action to recover . . . upon a book account whether consisting of one or more entries" may be commenced within four years, and the instant action was commenced within that period.

The judgment is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.