TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  | : |  |
| --- | --- | --- |
| OPINION | : | No. 98-1101 |
|  | : |  |
| of | : | February 4, 1999 |
|  | : |  |
| BILL LOCKYER | : |  |
| Attorney General | : |  |
|  | : |  |
| GREGORY L. GONOT | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

THE HONORABLE JAMES P. FOX, DISTRICT ATTORNEY, COUNTY OF SAN MATEO, has requested an opinion on the following question:

May a charitable organization offer raffle tickets at $100 each or $500 for six tickets, with an automobile as the contest prize, if all prospective purchasers are told they may obtain one raffle ticket free?

CONCLUSION

A charitable organization may not raffle tickets at $100 each or $500 for six tickets, with an automobile as the contest prize, even if all prospective purchasers are told they may obtain one raffle ticket free.

ANALYSIS

The question presented for resolution concerns whether a charitable organization may conduct a raffle if it allows each participant to obtain one raffle ticket free. Would the proposal violate the terms of Penal Code section 319,[1] which implements article IV, section 19, subdivision (a) of the California Constitution? The constitutional provision states: "The Legislature has no power to authorize lotteries and shall prohibit the sale of lottery tickets in the State."[2] Section 319 defines a lottery as follows:

> "A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known."[3]

We conclude that the proposed raffle would violate the terms of section 319.

A lottery has three essential elements: (1) a prize, (2) distributed by chance, and (3) payment of consideration. (*Cal. Gas. Retailers* v. *Regal Petroleum Corp.* (1958) 50 Cal.2d 844, 851.) As section 319 indicates, a raffle is another name for a lottery. (71 Ops.Cal.Atty.Gen. 139, 153 (1988).) In a typical raffle, valuable merchandise (the prize) is distributed by chance (drawing the winning ticket) to those who have paid a valuable consideration for the chance to win the prize. (*Ibid.*)

Here we are given that the item to be awarded to the winner of the contest is an automobile (see *Holmes* v. *Saunders* (1952) 114 Cal.App.2d 389, 390 [automobile is property which satisfies the prize element of a lottery]) and that the prize will be distributed by chance (see *People* v. *Cardas* (1933) 137 Cal.App.Supp. 788, 789-790 [drawing the winning ticket from a container is a method of distribution by chance]).

---

[1] All undesignated section references hereafter are to the Penal Code.

[2] The Constitution authorizes the California State Lottery as an exception. (Cal. Const., art. IV, § 19, subd. (d).)

[3] The Constitution (Cal. Const., art. IV, § 19, subd. (c)) and a statute (§ 326.5) allow charitable organizations to conduct bingo games without violating section 319. Otherwise, all games of chance organized for charitable purposes are subject to the state's gambling laws (§ 319 - 337).

We are also given that each ticket will cost $100, but that all persons solicited for participation in the contest will be told that they may obtain one free ticket by contacting a representative of the charitable organization at its headquarters. Prospective participants will further be told that if they pay $500, they will receive six tickets. Thus, an extra chance at winning the contest will be given to anyone paying $500. Do these circumstances provide the third element–consideration paid for the chance to win–that is necessary to make this particular fund-raising scheme an illegal lottery?

The question whether valuable consideration will be paid in the proposed contest is to be determined from the standpoint of the holders of the tickets who might win the prize, not from the standpoint of those who are conducting the event. (*People* v. *Cardas*, *supra*, 137 Cal.App.Supp. at 791; *Cal. Gas. Retailers* v. *Regal Petroleum Corp.*, *supra*, 50 Cal.2d at 860.) Accordingly, it is immaterial that the sponsor will not profit from the game or that a worthy charity will be benefitted. (64 Ops.Cal.Atty.Gen. 114, 117 (1981).)

Since the statutory definition requires that the consideration paid be "valuable," it has been held that requiring a ticket holder to go to the contest operator's place of business to deposit the ticket stub cannot constitute the necessary consideration. (*Cal. Gas. Retailers* v. *Regal Petroleum Corp.*, *supra*, 50 Cal.2d at 861-862.) Similarly, it cannot be said here of the proposed raffle that a holder of one free ticket, and no others purchased, will have paid a "valuable consideration" simply by having to go to the headquarters of the charitable organization to acquire the free ticket.

If a distribution of free tickets is "general and indiscriminate," the plan is a gratuitous distribution of property, not a lottery, because the ticket holders do not pay a valuable consideration for their tickets. (71 Ops.Cal.Atty.Gen., *supra*, at 149.) However, this requires that *every* chance to win be made freely available. (68 Ops.Cal.Atty.Gen. 275, 277 (1985).) A contest does not cease to be a lottery because some are admitted to play without paying for the privilege, so long as others do pay for their chance to win the prize. (*People* v. *Shira* (1976) 62 Cal.App.3d 442, 460.) While a donation gratuitously given does not constitute consideration (68 Ops.Cal.Atty.Gen., *supra*, at 276; 60 Ops.Cal.Atty.Gen. 130, 132-133 (1976)), a "donation" *required* to be given, whether to the contest operator or to a designated charity, does constitute consideration (68 Ops.Cal.Atty.Gen., *supra*, at 277, fn. 2; 64 Ops.Cal.Atty.Gen., *supra*, at 116-117).

Here, all participants will be entitled to one free ticket. Hence, it could be argued that anyone who pays $100 for a ticket will be making a voluntary donation because an *equal* chance at winning the prize will be available for free. Nevertheless, since each participant is limited to one free ticket, anyone paying more than $100 for additional tickets must be considered to be paying "valuable consideration" for the additional chances to win the new automobile. This is particularly true of those paying $500 because they will receive

more than their proportional share of the chances to win.

In 64 Ops.Cal.Atty.Gen. 114, *supra*, we had little difficulty in concluding that a game of keno, in which some players participated without paying anything and others made a "donation" to a charity entitling them to greater prizes if they won, was an illegal lottery. (*Id.*, at p. 117.) Similarly, in the proposed scheme before us, some of the participants will pay valuable consideration to increase their chances of winning the prize. They will obtain a benefit not otherwise available to every contestant. As to those persons, the game is a lottery and therefore the entire scheme is a lottery. (*People* v. *Shira*, *supra*, 62 Cal.App.3d at 460.) In *State* v. *Mabrey* (1953) 245 Iowa 428 [60 N.W.2d 889, 893], in language relied upon by the court in *People* v. *Shira*, *supra*, 62 Cal.App.3d at 460, and by our office in 64 Ops.Cal.Atty.Gen., *supra*, at 117, the court analyzed the relevant issues as follows:

> ". . . [T]he game here was a lottery at least as to those who purchased tickets. It did not cease to be a lottery because some were admitted to play without paying for the privilege, so long as others paid for their chances. Presence of the nonpaying participants did not change the status of those who paid. If it was a lottery as to some who played the game it was nonetheless a lottery.

> "Unless we close our eyes to reality the conclusion is justified that in actual operation ticket purchasers—perhaps unwittingly—paid for their own chance at prizes and also for the chance of those who were admitted to the game without paying. Thus presence of the non paying participants did not change the essential character of the enterprise. Indeed, as several courts have pointed out, opening a lottery to nonpaying participants is, in a sense, all the more objectionable in that it reduces the chance for the prize of those who pay therefor and would seem to be entitled to it."

We therefore conclude that a charitable organization may not offer raffle tickets at $100 each or $500 for six tickets, with an automobile as the contest prize, even if all prospective purchasers are told they may obtain one raffle ticket free.

* * * * *