[Civ. No. 6653. Third Dist. Mar. 29, 1943.]

G. C. GARDNER, Respondent, v. J. WESLEY RUTHER-FORD, as Assignee, etc., Appellant.

Wallace Rutherford and Sheldon Rutherford for Appellant.

Coombs & Dunlap, Frank L. Dunlap, Nathan F. Coombs and David C. Dunlap for Respondent.

SCHOTTKY, J. pro tem.—Respondent G. C. Gardner and Frank Ponceitta were partners in a business known as the "Napa Valley Creamery" from December, 1923, to January 1, 1927. Shortly before January 1, 1927, they incorporated under the name of "Ambrosia Creamery, Inc.," and on that date transferred all the assets of the Napa Valley Creamery to the new corporation, and had the corporation assume all the liabilities of the partnership. Eighty-nine per cent of the stock was issued to respondent Gardner and eleven per cent to Ponceitta, but three of these shares were issued to three other persons in order that they might qualify as directors, one of the three being respondent's father, one, his attorney, and the third, the bookkeeper of the partnership who also continued as the bookkeeper for the corporation. The books of the partnership were continued as the books of the corporation. Respondent Gardner was elected president and general manager of the corporation and Ponceitta was elected secretary. On April 21, 1939, the said corporation made an assignment to the Sheriff of Napa County for the benefit of creditors, and at a meeting of the creditors, held on April 29, 1939, appellant was elected by the creditors as assignee in the place and stead of said sheriff.

On May, 25, 1939, respondent commenced this action against appellant. The complaint contained thirteen causes of action, the first three causes of action being to recover $3,256.02 for "money lent" to the corporation by respondent, the first being on an open book account, the second, upon an account stated, and the third, upon an open, mutual and current account. The fourth, fifth and sixth causes of action were to recover $12,349.31 for rental on real property owned by respondent and operated by the corporation, the fourth being upon an open book account, the fifth being upon an account stated, and the sixth being upon a mutual, open and current account. The seventh, eighth and ninth causes of action were to recover the sum of $3,522.35 for salary due respondent as president of the corporation, the seventh being upon an open book account, the eighth upon an account stated, and the ninth upon a mutual, open and current account. The tenth, eleventh and twelfth causes of action were to recover the sum of $1,044.51 for salary due respondent as an officer of the corporation, the tenth being upon an open book account, the eleventh upon an account stated and the twelfth upon a mutual, open and current account. The thirteenth cause of

action was to recover the sum of $3,900 upon a promissory note executed by the corporation in favor of Dora L. Gardner, and assigned to respondent.

Appellant assignee in his answer to the complaint denied the various indebtedness set forth in the complaint; set up several sections of the Code of Civil Procedure relating to the statute of limitations; and as to the rent account, appellant set up the further defense that respondent, as president and general manager, caused the bookkeeper of the corporation to charge to the rent account certain items which it had previously been the custom to charge to his salary and loan account at a time when the corporation was insolvent and after the assignment for the benefit of creditors had been made, and that such charges were made for the purpose of obtaining as against the other creditors a preference by tolling the statute of limitations.

At the trial there was no contest as to the thirteenth cause of action upon the promissory note to Dora L. Gardner. As to other causes of action the court found in favor of respondent as to the first, fourth, seventh and tenth causes of action, finding that the evidence sustained respondent's allegations of an open book account, and finding further against appellant's defense of the statute of limitations and the other defenses set forth by appellant. Judgment was entered in favor of respondent and this appeal is from said judgment.

Before discussing the various points raised by appellant upon this appeal we will make a brief statement of the factual situation as shown by the record. As hereinbefore stated, there were thirteen separate causes of action, but the first twelve of these involved four accounts which appeared on the books of the corporation, and which are referred to in the briefs as the "loan account," the "rent account," the "note account" and the "salary account." These accounts were separate ledger accounts on the books of the corporation, and were sued upon as separate accounts, but, as we view the matter, the four accounts together comprise the complete account between respondent Gardner and appellant corporation. We make this statement at the outset because so much of the argument of appellant as to the application of the statute of limitations is based upon the assumption that each account must be regarded as a separate account bearing no relation to the other accounts.

The "loan account" arose out of various advances made by Gardner to the corporation. It was stipulated that as of January 1, 1931, the sum of $2,535.51 was owing to Gardner on this account. From 1931 to 1935 no payments were made on this account and there were no additional advances or interest charges so no new entries were made on the ledger sheet. The account, however, was carried on the monthly trial balance books of the corporation. On January 1, 1936, this balance of $2,535.51 was again entered on the ledger sheet. On February 10, 1936, payments on the account totaling $1,429.49 were made by the corporation and entered in the account. On February 17, 1936, respondent advanced $2,000 more to the corporation and on May 17, 1938, he made a second $2,000 advance. From March, 1936, to March, 1939, the corporation made payments totaling $1,850 which were entered in said ledger account as the sum of $50 per month was deducted by the bank from the bank account of the corporation to be applied by the bank on money which respondent had borrowed from the bank.

Respondent Gardner purchased the property upon which the business was conducted in 1924, at which time the partnership had a lease upon the property for five years from May 15, 1920. This lease expired in 1925, and although it had an option for renewal, the option was not exercised. The rental under the lease was $100 a month, and after the corporation took over the business this rental continued at $100 until May 31, 1927, at which time it was raised to $125 per month. The rent account, as shown by the ledger, balanced on January 1, 1930. The rent payable to respondent was entered in the ledger rent account monthly, but after 1931 there were no payments entered on the rent account until April, 1939, when several items totaling $284.02 were charged against respondent on the rent account. It appears that these items were actually entered in the ledger rent account after the date of the assignment, and it is argued by appellant that these items should have been credited to the loan and salary accounts as had been the custom previous to this time.

In 1930 respondent was given a note by the corporation in the sum of $2,670 to cover a portion of his back salary, the amount of the note being at that time deducted from his salary account. An account was opened on the corporation books covering the note, and interest was credited on the account

annually until December 31, 1936, at which time the amount of principal and interest, as shown by the ledger account, amounted to $3,522.35, and no further interest was charged after that date. The note itself was destroyed by Gardner but it is clear from the record that it was agreed between respondent and the corporation that the so-called note account should be considered as a book account, and the court found that the account was carried as a book account in the ledger of the corporation.

As to the so-called "salary account" the only difference between the parties is that appellant contends that the items credited by the corporation in April, 1939, upon the rent account should have been credited upon the salary account, which would make the balance on this account $903.54 instead of the $1,044.51 alleged by respondent and found by the court. Respondent in answer to this contention of appellant states that it makes no difference to him what account the April credits are applied to. The so-called salary account appears to be a ledger account in which the amount of respondent's salary was credited monthly and in which payments made to him or for his account were likewise entered down to and including April, 1936, when, according to the ledger, said account showed a balance of $1,044.51 due to respondent.

Appellant urges a number of contentions why the judgment should be reversed. He first contends that the corporation, Ambrosia Creamery, Inc., was the *alter ego* of respondent Gardner and that, therefore, Gardner should not be permitted to establish his asserted claims against the corporation because he was the corporation. Appellant asserts: "To permit respondent to share with the creditors the assets of the insolvent corporation under all the circumstances of this case would create a situation that would not be fair, in our opinion, to the real creditors; he would, under the decision in this case, if permitted to stand, have an undue and unfair advantage." Appellant points out that respondent Gardner owned 89% of the stock of the corporation, that he was president and general manager, that he supervised the business including the directing of how the books should be kept and how credits should be entered, that he collected large sums as monthly salary and in addition received large amounts in additional salary at the end of various years at a time when the corporation was not paying its rent. He then cites *Sweet*

v. *Watson's Nursery,* 33 Cal.App.2d 699 [92 P.2d 812], and other cases in which the well-settled rule of law is stated that where a corporation is merely the business conduit of an individual or partners, the courts will look through the corporation to the individual. But it is also a rule of law, as stated in *Erkenbrecher* v. *Grant,* 187 Cal. 7 [200 P. 641], at page 11:

"In order to cast aside the legal fiction of distinct corporate existence as distinguished from those who own its capital stock, it is not enough that it is so organized and controlled and its affairs so managed as to make it 'merely an instrumentality, conduit, or adjunct' of its stockholders, but it must further appear that they are the 'business conduits and *alter ego* of one another,' and that to recognize their separate entities would aid the consummation of a wrong. Divested of the essentials which we have enumerated, the mere circumstance that all the capital stock of a corporation is owned or controlled by one or more persons, does not, and should not, destroy its separate existence; were it otherwise, few private corporations could preserve their distinct identity, which would mean the complete destruction of the primary object of their organization."

The difficulty with this contention of appellant is that while the manner in which the affairs of the corporation were conducted might lend some support to appellant's argument that the corporation was controlled by respondent Gardner largely for his own benefit, the defense of *alter ego* was not pleaded, was not urged in the trial court, and there is no finding of the court upon it. Such a defense should be pleaded so that it can be passed upon by the trial court, and may not properly be urged for the first time upon appeal. But, apart from the matter of pleading, and bearing in mind that the trial court, with all the books of the corporation and all the testimony before it, determined that respondent was entitled to judgment for the various amounts found to be due him, we do not believe that the evidence compels a finding that the corporation was merely the business conduit of respondent Gardner. There can be no question that the Ambrosia Creamery, Inc., was operated as a corporation from January 1, 1927, to the date of the assignment, that its corporate entity was preserved in all of its transactions and in its books and accounts. As

was said in *Hollywood Cleaning & Pressing Co.* v. *Hollywood Laundry Service, Inc.*, 217 Cal. 124 [17 P.2d 709], at page 129:

"Whatever may be the rule in other jurisdictions, the rule is well settled in this state that the mere fact one or two individuals or corporations own all of the stock of another corporation is not of itself sufficient to cause the courts to disregard the corporate entity of the last corporation and to treat it as the *alter ego* of the individual or corporation that owns its stock. In addition it must be shown that there is such a unity of interest and ownership that the individuality of such corporation and the owner or owners of its stock has ceased; and it must further appear that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice. Bad faith in one form or another must be shown before the court may disregard the fiction of separate corporate existence."

The second contention of appellant is that the judgment on the first count, the so-called "loan account," is erroneous because there were no debits or credits on said account from December 31, 1930, to February 10, 1936, and it was therefore barred by subdivisions 1 and 2 of section 337 of the Code of Civil Procedure, and that respondent failed to prove a new acknowledgment signed by the corporation as required by section 360.

The trial court found as to the first count that the corporation was indebted to respondent upon an open book account and that it was not barred by subdivisions 1 and 2 of said section 337. In the case of *Furlow Pressed Brick Co.* v. *Balboa Land & Water Co.*, 186 Cal. 754 [200 P. 625], the court said at page 763:

"The rule has long been settled in this state with reference to 'a mutual, open and current account' mentioned in subdivision 2, section 337 of the Code of Civil Procedure, that the statute runs from the date of the last item shown in the account (*Carter* v. *Canty*, 181 Cal. 749 [186 P. 346]). The evident purpose of the amendment, subdivision 2, section 337 of the Code of Civil Procedure, was to put an open book account upon the same basis. Such an account is differentiated from an open, mutual and current account solely by the fact that to constitute an open, mutual and current account it was necessary that items other than cash appear as credits upon the account, whereas, in an open book account cash payments

alone are sufficient to characterize the account as an 'open book account.' If we apply the rule so well established as to 'a mutual, open and current account,' it would follow that the four-year period of limitations runs from the date of the last payment, in this case August 13, 1914.'' (See, also, *Bailey* v. *Hoffman,* 99 Cal.App. 347, 350 [278 P. 498] ; *Egan* v. *Bishop,* 8 Cal.App.2d 119, 123 [47 P.2d 500].)

While it is true that there appears to be no case in California in which the precise question of an open account in which there was a lapse of more than four years between items was before the court, we are convinced that both upon reason and authority a book account means the entire account between the parties at the time the action is commenced, and the period of the statute of limitations upon such an account must be computed from the date of the last item, even though there may have been a lapse of more than four years between some of the items. In other words, to quote the language of *Egan* v. *Bishop, supra,* ''the action is not barred piecemeal as to the several items, because in an action on the book account they are all to be regarded as a part of one entire account and cause of action.''

We believe further that such must have been the intent of the legislature in the 1917 amendment to subdivision 2 of said section 337. It must always be borne in mind that the statute of limitations is a bar to the remedy only, and does not extinguish, or even impair, the obligation of the debtor.

So we conclude upon this point that the so-called ''loan account,'' even taking it as it appeared on the ledger of the corporation, was not barred by subdivision 2 of section 337. But, as we have hereinbefore stated, we believe that even though the ''loan account'' and the other accounts were separate ledger accounts, and were sued upon as separate ledger accounts, the four accounts together comprise the complete account between respondent Gardner and the corporation of which appellant is the assignee, and with this in mind it appears that there is no lapse of four years between any of the items of the combined account. ■ The fact that said separate ledger accounts were made the basis of separate causes of action and were thus presented in the trial court does not in our opinion change the rule as to the operation of the statute of limitations, because all of the

books of the corporation were introduced in evidence and showed clearly the entire account between Gardner and the corporation. To quote once more from *Egan* v. *Bishop, supra:*

"It is claimed by appellant that these records were insufficient to constitute a single book account and that they in reality show a great number of book accounts, wholly unrelated to each other. We do not accede to this view. The law does not prescribe any standard of bookkeeping practice which all must follow, regardless of the nature of the business of which the record is kept. We think it makes no difference whether the account is kept in one book or several so long as they are permanent records, and constitute a system of bookkeeping as distinguished from mere private memoranda. The records were sufficient to support a cause of action on a book account."

There is, of course, no doubt as to the rule that an action upon an open account may be based upon an account kept by either party. (*Moss* v. *Underwriters' Report, Inc.,* 12 Cal.2d 266 [83 P.2d 503]; *Shanklin* v. *Scribner,* 62 Cal.App. 487 [217 P. 130].)

Appellant's third contention is that the so-called "rent account" is based upon an oral lease for the payment of rental and not upon a book account and it is barred by section 339 of the Code of Civil Procedure as to all items of rent more than two years old. Appellant points out that after the corporation was organized on January 1, 1927, it continued to pay the same rental as was specified in the lease to the partnership, which lease expired in 1925, until the rental was raised to $125 in May, 1927, and that respondent cannot avoid the statute of limitations by bringing his action for rent upon an open book account. Appellant relies very strongly upon the case of *Tillson* v. *Peters,* 41 Cal.App.2d 671 [107 P.2d 434], in which this court said:

"Clearly this suit is founded on *an oral contract* for the leasing of real property. (Sec. 1945, Civ. Code.) It is a suit in *assumpsit* to recover deferred installments of rent which became due monthly at specified times and in definite sums according to the terms of the *oral contract.* It has been held that the fulfillment of the terms of either a written or an oral contract, similar to the one which is here involved, may not be avoided by attempting to convert the

suit for breach of the specific terms of a contract into an action based on an open book account. A suit to recover unpaid installments of rental due according to the terms of either a written or an oral contract, in specified monthly sums, is subject to the bar of the statute of limitations from the respective dates when each installment becomes due. In such an action upon an oral contract the statute of limitations may not be extended from two to four years by the mere device of attempting to convert the cause into a suit based on an open book account.''

The facts in *Tillson* v. *Peters* are, however, quite different from the facts in the instant case. In that case the action was not upon a book account at all and the complaint made no reference to a book account. As the opinion states:

''The complaint does not pretend to state a cause of action based on a book account. It attempts to allege a cause of action for unpaid installments of rent due for a specified period of time from April 1, 1931, to April 1, 1936. . . .

''At the trial the plaintiff sought to avoid the effect of the statute of limitations by attempting to prove that the action was founded on a balance of rental shown to be due upon an open book account. It appears that the plaintiff kept an account book and ledger in which he credited the defendant only with certain sums of money, representing installments of rent, on the respective dates when they were paid. The history of the transaction was not recorded in the books. Neither the original indebtedness nor unpaid installments of rent were charged to the defendant or entered in the books. The books were not offered in evidence. It is impossible to determine from the testimony of the contents of the book entries which were adduced what the transaction was about, or whether any balance was thereby shown to be due to the plaintiff. Evidently the books do not disclose those facts.''

In the instant case, however, it is clear from the testimony and the books themselves that the so-called rent account was carried on the books of the corporation as a complete account showing the transactions as to the rent, that it was intended by the parties to be so carried on the books of the corporation, and that the finding of the trial court that the rent account was carried on the books of the corporation as an open book account is supported by the evidence.

The true rule applicable to the facts of the instant case is well stated in *Sacher* v. *Paige*, 149 Kan. 662 [88 P.2d 1013], as follows:

"Defendant appeals, contending that plaintiff's cause of action was not based on a mutual, open, current account as defined in our decisions. *Spencer* v. *Sowers*, 118 Kan. 259 234 P. 972, 39 A.L.R. 365. He argues that the items of monthly rental for part of plaintiff's building were not proper to be included in the account because each month's rent was a separate and distinct charge for which a separate action could have been maintained and eviction for nonpayment could have been enforced. There need be no quarrel with that general rule of law. But there is nothing in that rule of law which forbids the landlord and tenant to satisfy their obligations towards each other by the practice of a mutual, open and current account. 1 C.J. 672.

"In *Nedvidek* v. *Meyer*, 46 Mo. 600, the action was upon an open, mutual, current account of miscellaneous items, rent, board, services, and goods sold. There, as in the case at bar, there was a question whether items for rent could properly be included in such an account. In giving an affirmative answer to that question, the Missouri supreme court said: 'Whether the rent was recoverable in an action upon the account is a question which can not be determined upon a motion in arrest. That is a matter to be settled by the evidence. If the parties had mutual dealings, and the rent became a subject of account between them, by mutual understanding and arrangement, it thereby became a proper matter of book charge, and recoverable in an action upon the account.' Page 601."

We, therefore, are unable to agree with appellant's contention that the judgment is erroneous as to the "rent account" which is the fourth cause of action.

Appellant's fourth contention is that respondent's seventh cause of action, upon the so-called "note account," was based upon a note and not upon an open book account and "that said cause of action was either not proved, or was barred by subdivisions 1 and 2 of section 337 of the Code of Civil Procedure of the State of California, and upon the further ground that plaintiff Gardner cancelled the note and the obligation by his deliberate and intentional destruc-

tion of the note by tearing it and then burning it in the furnace of the Corporation.''

The trial court found as to said seventh cause of action:

''That on December 31st, 1930, Ambrosia gave to Plaintiff its promissory note in the sum of $2,670.00, bearing interest at the rate of 4% per annum, (Plaintiff's Exhibit No. 15); that this note was for back salary due Plaintiff from Ambrosia; that at the same time Gardner's salary account, hereinafter covered in these findings, was debited in this amount. (Exhibits 9 and 15). This note was also carried as a separate book account in the ledger and trial balance books of the corporation and interest credited thereon annually until December 31, 1936, after which time, there were no further charges or entries made. (Plaintiff's Exhibits 14, 15, 16, 17 and 18). Both the ledger and trial balance sheets of the corporation contained an interest credit as of December 31, 1936, and showed a balance due the Plaintiff, Gardner, in this account on that date in the sum of $3,522.35. This amount was carried in the ledger and trial balance book until April 21st, 1939, in an account known as the 'G. C. Gardner Note Account.' This action was filed by Plaintiff on the 25th day of May, 1939, less than four (4) years after the date of the last entry in this account.

''The Court further finds that this note account had been opened and kept by the bookkeeper of the corporation in accordance with instructions given by Gardner and Frank Ponceitta, who were stockholders, officers and directors of the corporation.''

In view of this finding by the court, which is supported by the record, the cases cited by appellant upon this point are not applicable as it must be held that the cause of action was upon the account and not upon the note.

We are not impressed with appellant's argument that because the note was destroyed the obligation was cancelled. While this may be the result of the destruction of a note where such is the intention, yet where, as here, the account covered by the note was part of a pre-existing obligation which continued to be carried on the books as an account, and where, in view of the ledger account, the note was not renewed, but was carried by agreement of the parties as an account upon the books of the corporation, we do not believe it can be held that the physical destruction of the note dis-

charged the obligation. In fact, the destruction of the note supports the view that the parties were relying upon the account rather than the note.

What we have hereinbefore stated makes it unnecessary to prolong this opinion by discussing several other points raised by appellant. Appellant closes his brief with the statement that to permit respondent to share with the creditors of the insolvent corporation would not under the circumstances of this case be fair and just to the real creditors. The record may lend some support to this view, but an appellate tribunal is bound by the record before it and by the findings of the trial court as to questions of fact where there is evidence to support such findings. Appellant in his pleadings and in the trial chose to rely solely upon the statute of limitations, and has neither alleged nor proved any fraud on the part of respondent, and while we may well believe that the manner in which the corporation's business was conducted was far from the best business management, yet we cannot say that the learned trial judge erred in the conclusion he reached in this case and in the judgment rendered.

In view of the foregoing the judgment is affirmed.

Thompson, J., and Adams, P. J., concurred.