274 F.2d 320
 Robert K. MAYO, H. E. Harper and Jack C. Murrell, as Trustees in Bankruptcy of Twin City Construction Company, Inc., Bankrupt, Appellants,
v.
PIONEER BANK & TRUST COMPANY, Appellee.
 No. 17540.
 United States Court of Appeals Fifth Circuit.
 January 20, 1960.
 
 Richard H. Switzer, W. V. Lunn, Cleve Burton, John A. Carstarphen, Jr., Shreveport, La., for appellant.
 Paul M. Hebert, Baton Rouge, La., Turner B. Morgan, Shreveport, La., for appellee.
 Before JONES, BROWN and WISDOM, Circuit Judges.
 PER CURIAM.
 
 
 1
 The Trustees in Bankruptcy of Twin City Construction Company, a Louisiana corporation, sued the Pioneer Bank and Trust Company of Shreveport, Louisiana, to recover $69,145. The Trustees contended that, under Sections 60, sub. b, and 67, sub. d, of the Bankruptcy Act, 11 U.S.C.A. §§ 96, sub. b, 107, sub. d, the bankrupt corporation made three voidable transfers to the Pioneer Bank: (1) one for $50,125; (2) one for $9000; and (3) one for $10,200. The district judge rejected all three claims of the Trustees. On appeal this Court affirmed the district court as to the first two claims, and reversed and remanded the case as to the third claim. 270 F.2d 823. The Trustees have applied for a rehearing as to the first two claims; Pioneer Bank has applied for a rehearing as to the third claim. Both applications are denied.
 
 I.
 
 2
 As to the $50,000 claim, the gist of the Trustees' application for a rehearing is that the Court was not justified in disregarding the corporate fiction. They argue that Twin City was chartered as a corporation under the Louisiana Corporation Act, LSA-C.C. art. 427 et seq., a statute specifically providing that a corporation is a separate legal entity; that our failure to give effect to the corporation as a separate legal entity is unconstitutional and is a refusal to apply the substantive law of Louisiana, in direct contravention of the Erie doctrine.
 
 
 3
 We are not impressed. The corporation law of Louisiana is no different from the corporation law of all the other states in general recognition of a corporation as a separate entity — for purposes of convenience and to serve the ends of justice. But when the corporate fiction is a mere simulacrum, an alter ego or business conduit of an individual, it may be disregarded in the interest of securing a just determination of the action. See 13 Am.Jur., Corporations, § 7; 1 Fletcher Cyclopedia Corporations § 41 (1931); Latty, The Corporate Entity as a Solvent of Legal Problems, 34 Mich.L.Rev. 599 (1936), to cite just one of many law review articles on the subject; the cases collected in the annotations, 1 A.L.R. 610, 34 A.L.R. 597, 63 A.L.R.2d 1051; and, Keller v. Haas, 1943, 202 La. 486, 12 So.2d 238 and Lindstrom v. Sauer, La. App.1936, 166 So. 636, to cite but two Louisiana cases for the general principle involved. Here especially, when the Court is exercising the traditional equity powers of a court of bankruptcy, we will not permit justice to be frustrated by a fiction that in this case defies common sense and has ceased to have value as a convenient legal tool subserving justice.
 
 
 4
 Under Section 67, sub. d(2) (b), 11 U.S.C.A. § 107, sub. d(2) (b), whether a fair consideration has been given for a transfer is "largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts" [270 F.2d 829]. Under Subsection (d) of Section 67, sub. d(2), as distinguished from Subsection (b), there must be "actual intent" to deceive creditors. This too is largely a question of fact. A federal appellate court does not have the same latitude a Louisiana appellate court has in reviewing the facts. We have, however, restudied the entire record. Again we see no error in the district court finding that: (1) there was a fair consideration; (2) "there is no clear and convincing proof that in making the repayment Gray made it with actual intent to defraud the future creditors of Twin City Construction Company."
 
 II.
 
 5
 The $9000 deposited in the checking account of Gray Construction Company represented a transfer of $9000 of $10,000 Twin City borrowed from the Bank. As to this, the Trustees urge that, at least to the extent of the covered overdraft of $4,398.69, the transfer was without consideration and voidable, under Section 67, sub. d(2) (a), (b), and (c), 11 U.S.C.A. § 107, sub. d(2) (a), (b), and (c). There is no merit to this contention.
 
 
 6
 In the section of the original opinion dealing with the $9000 claim we did not discuss the question of consideration moving to Twin City, because we looked through the corporate fiction and found that Twin City, Gray Construction Company, and Gray were one. Similarly, the district court found: "The Court finds as a fact that there was a considerable degree of commingling of the affairs of W. A. Gray Construction Company and Twin City Construction Company. The same office was occupied, the same personnel and central overhead staff was employed, and Gray, in practice, was using the W. A. Gray Construction Company in connection with the Twin City Blytheville contract being carried out. * * * In accepting the deposit of $9000.00, in giving the credit, and by paying the items subsequently paid and covering the previously paid items included in the overdraft, the Bank acted in good faith and furnished a fair consideration in the form of such payments and bank clearances * * *" We agree.
 
 
 7
 The entire $9000 was transferred to W. A. Gray Construction Company, not to the Pioneer Bank; although of course the Bank benefited from the automatic covering of the overdraft. As pointed out by the trial judge in his opinion, "the Bank was merely a depository conduit through which the money passed" from Twin City to W. A. Gray Construction Company. We note that in Civil Action No. 5445 of the Docket of the District Court for the Western District of Louisiana the Trustees of W. A. Gray Construction Company are seeking recovery of the amount of the overdraft on the theory that the $9000 was Gray's money which was improperly paid to the Bank by preference.
 
 
 8
 Colby v. Riggs National Bank, 1937, 67 App.D.C. 259, 92 F.2d 183, 114 A.L.R. 1065 was cited and discussed by both parties in their original briefs. The trustees state that they cited Colby only as authority for the proposition that under common law rules the Bank would be liable unless it could bring itself within one of the statutory exceptions of the Uniform Fiduciaries Act. They contend that in the case at bar Section 6 of the Act gives no protection since it applies only to transfer by check; here the transfer was by a debit memorandum.
 
 
 9
 We recognize the force of the principle, clearly expressed in the Uniform Fiduciaries Act, that ordinary common law rules apply unless the Bank brings itself within a statutory exception. We reaffirm our holding however that Section 9 of the Uniform Fiduciaries Act,[1] LSA-R.S. 9:3809, protects the Pioneer Bank as to the entire claim of $9000. As for Colby, and as far as an overdraft is concerned, we feel that the dissent in that case presents the sound view that there is no basis for distinguishing between giving a check to a bank in payment of a personal indebtedness and depositing a check in overdrawn account. Similarly, for purposes of Section 9, we see no difference between giving a check to a bank in payment of a personal indebtedness (or depositing a check in an overdrawn account) and giving an order, for record purposes cast in the form of a debit memorandum, to a bank to deposit funds in an overdrawn account.
 
 III.
 
 10
 As to the $10,020 claim, the Pioneer Bank argues that the Court erred in holding that the right of the Bank to its pledgee's lien and privilege was not perfected by the payment to the Bank of the $10,020 of the proceeds of the Blytheville contract. The Bank relies on Ricotta, Trustee in Bankruptcy of Ricotta (L. E. Kimball Construction Co.) v. Burns Coal Building Supply Co., 2 Cir., 1959, 264 F.2d 749, a case not cited in the original briefs.
 
 
 11
 We see no reason to alter our opinion. The instant case involves Louisiana law. Under Louisiana law, notice to the debtor is essential to the validity of the pledge. We regard the difference between having a valid pledge prior to payment and not having a valid pledge, because of lack of notice, as something more than a subtle distinction.
 
 
 12
 Payment alone, as the Trustees in effect contend, should not give an advantage to the Bank. Every voidable preference involves the bankrupt's recognition of his debt by payment. The question here however is, first, was this a valid pledge prior to payment under Louisiana law; then, did a preference exist and was it voidable under Section 60, sub. b, 11 U.S.C.A. § 96, sub. b, negating secret liens.
 
 
 13
 The Ricotta case, we add, concerned materialmen's liens under Section 67, sub. b, 11 U.S.C.A. § 107, sub. b. A materialman's lien differs substantially from a contractual security transaction in the way it comes into being, in the possibility of its engendering fraud, and in its legislative treatment based on the underlying policies favoring materialmen's liens.
 
 
 14
 We have considered all the points raised in both petitions for rehearing, whether discussed in this opinion or not.
 
 
 15
 The petitions for rehearing are denied.
 
 
 
 Notes:
 
 
 [1]
 "If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and endorsed by him, if he is empowered to endorse such checks,or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless, the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the checks amounts to bad faith." LSA-R.S. 9:3809.