MANNEY & COMPANY, Appellant,

v.

TEXAS RESERVE LIFE INSURANCE
COMPANY et al., Appellees.

No. 16732.

Court of Civil Appeals of Texas.

Dallas.

Oct. 7, 1966.

Rehearing Denied Oct. 28, 1966.

William A. McKenzie, Dallas, for appellant.

Thompson, Coe, Cousins & Irons and R. B. Cousins, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

Manney & Company, a Texas corporation, has perfected this appeal from an order of the district court granting a summary judgment and thereby denying to it any recovery in its stockholder's derivative action against Texas Reserve Life Insurance Company, a Corporation, now known as Great Southwest Life Insurance Company, a Corporation; Great Southwest Life Insurance Company, a Corporation; Big "D" Development Corporation; D. A. Childre and H. Thad Childre.

In its original petition plaintiff alleged that it was a minority stockholder of Texas Reserve Life Insurance Company and that it brought this action for and on behalf of the corporation as well as all other stockholders of Texas Reserve Life Insurance Company similarly situated to recover the sum of $1,000,000 which, it was charged, the defendants, and especially the defendants H. Thad Childre and D. A. Childre, had misappropriated and used for their own benefit to the loss and detriment of the plaintiff and other minority stockholders. It was also asserted that the defendants had manipulated control of the Texas Reserve Life Insurance Company in such a manner as to carry out a scheme through taking advantage of and seizing corporate opportunity to unjustly and wrongfully enrich the defendants through

the use of the money borrowed from the Texas Reserve Life Insurance Company, all to the injury and damage of the minority stockholders. It was further contended that defendants had wrongfully caused a merger of Texas Reserve Life Insurance Company with Great Southwest Life Insurance Company. Plaintiff prayed for an accounting, for the recovery of $1,000,000, attorneys' fees, a cancellation of the merger of the two corporations, exemplary damages, and the establishment of a constructive trust of all sums of money received by defendants from Texas Reserve Life Insurance Company.

Defendants denied any wrongdoing and alleged that the acts complained about were carried out and performed by the proper officials of the corporations in accordance with the laws of the State of Texas.

Defendants filed their motion for summary judgment, supported by affidavits and depositions. Plaintiff responded with controverting affidavit and depositions. The motion for summary judgment was sustained and this appeal follows.

## FACTS

Texas Reserve Life Insurance Company was a Texas insurance corporation. It had issued and outstanding 247 shares of preferred stock with a par value of $50 per share and 498,172.2 shares of common stock with a par value of $1.00 per share.

Great Southwest Life Insurance Company was formed on December 20, 1951. D. A. Childre was President and H. Thad Childre was Chairman of the Board.

Big "D" Development Corporation was formed in November 1955 under the laws of the State of Texas. D. A. Childre was President and H. Thad Childre was Chairman of the Board. It had 2,676,233 shares of common stock at a par value of $1.00 each. Shareholders of Big "D" Development Corporation owning approximately 93 per cent of its total outstanding shares entered into a voting trust agreement. H.

Thad Childre and D. A. Childre, brothers, owned approximately 64 per cent of the units of the voting trust agreement, thereby having voting control of the corporation.

In the year 1964 there was in existence a voting trust agreement representing approximately 54 per cent of the total outstanding shares of stock of Great Southwest Life Insurance Company. 56 per cent of the voting trust units in that voting trust agreement were owned by Big "D" Development Corporation. In addition, Big "D" Development Corporation owned 56,-133 shares of the common stock of Great Southwest Life Insurance Company. This situation gave Big "D" Development Corporation voting control of Great Southwest Life Insurance Company.

During the spring of 1964, it came to the attention of the management of Big "D" Development Corporation that Lincoln Liberty Life Insurance Company held a promissory note executed by J. S. Shively, then President of Texas Reserve Life Insurance Company, the payment of said note being secured by a pledge of 138,984 shares of common stock in Texas Reserve Life Insurance Company and also by slightly more than 50 per cent of the outstanding shares of Inter-Continental Corporation. Inter-Continental Corporation owned 113,310 shares of common stock of Texas Reserve Life Insurance Company. The aggregate of such common shares of Texas Reserve Life Insurance Company owned by Shively and Inter-Continental Corporation was 252,-294 out of 498,172 outstanding, or slightly over 50 per cent.

On June 4, 1964 Big "D" Development Corporation, acting through its officers and counsel at foreclosure sale, bought the pledged shares of stock. At that time Big "D" Development Corporation paid to Lincoln Liberty Life Insurance Company the sum of $700,000 in cash and gave a note payable on or before thirty days in the sum of $778,283.44, thereby paying or agreeing to pay the sum of $1,478,283.44 for the stock it purchased. In addition

to this it contingently assumed a $250,000 obligation of J. S. Shively to Twin Lakes Corporation.

The $700,000 in cash was obtained by the issuance to Great Southwest Life Insurance Company and the investment by that company in a bond executed by Big "D" Development Corporation, said bond being personally guaranteed by all of the individual directors of Big "D" Development Corporation.

On or about June 8, 1964 the old officers and Board of Directors of Texas Reserve Life Insurance Company resigned and a new set of officers and directors was elected. H. Thad Childre was elected Chairman of the Board and D. A. Childre was elected President. On or about that date, pursuant to a duly authorized resolution of the directors of Big "D" Development Corporation and Texas Reserve Life Insurance Company, Big "D" Development Corporation executed and delivered its bond or debenture in the amount of $1,000,000 and Texas Reserve Life Insurance Company invested in such bond and transferred the sum of $1,000,000 to Big "D" Development Corporation. A portion of the resolution reads:

"Be it resolved that Texas Reserve Life Insurance Company be, and it is hereby authorized to invest One Million Dollars ($1,000,000.00) of its capital, surplus and contingency funds over and above the amount of its policy reserves in a five-year five and one-half per cent (5½%) corporate bond of Big "D" Development Corporation."

The bond issued by Big "D" Development Corporation was personally endorsed by seventeen directors and two shareholders who were not directors of Big "D" Development Corporation. These shareholders had a combined financial statement of in excess of $8,000,000 in assets. Out of the funds thus realized by Big "D" Development Corporation the $778,283.44 note, mentioned above, was paid. At the time of the investment in the bond of Big "D" De-

velopment Corporation it was a corporation more than five years old and had not defaulted in any obligation.

Thereafter, the management of the two life insurance companies proposed a merger whereby Texas Reserve Life Insurance Company would become merged into Great Southwest Life Insurance Company under a plan issued in a proxy statement which was prepared and mailed to stockholders of the corporations on November 30, 1964. This proxy statement was completely detailed and set forth the method by which the merger was to be accomplished and providing for the receipt by stockholders of Texas Reserve Life Insurance Company of certain ratio shares in the new corporation. Following due notice a meeting of the two insurance corporations was held at which more than 80 per cent of the stock in each corporation was voted in favor of the merger. Pursuant to the provisions of the Insurance Code of the State of Texas, the merger was presented in all of its aspects to the Commissioner of Insurance at a public hearing and was by him approved. At that hearing no protest was made by appellant. The order of the Insurance Commissioner provided, inter alia, as follows:

"The Commissioner further finds: (1) that the minimum capital and surplus, as required by law, is the bona fide property of GREAT SOUTHWEST LIFE INSURANCE COMPANY, (2) that the officers, directors and managing executives of GREAT SOUTHWEST LIFE INSURANCE COMPANY have sufficient insurance experience, ability and standing to render success of the company probable; and (3) that GREAT SOUTHWEST LIFE INSURANCE COMPANY is acting in good faith.

"Based upon the evidence and testimony presented at the hearing and the documents filed, it appears to the Commissioner of Insurance that the Plan of Merger does not substantially reduce the security of and service to be rendered

the policyholders of the two companies, and that such plan is not contrary to law nor contrary to the best interests of the policyholders affected by the plan. * * *"

## OPINION

Since this is an appeal from an order sustaining a motion for summary judgment pursuant to Rule 166–A, Vernon's Texas Rules of Civil Procedure, the sole question is whether genuine issues of fact are presented by the pleadings, affidavits, depositions and other documents presented to the trial court. In answering this question we must necessarily adhere to and follow the now well established procedure of reviewing all of the record in the light most favorable to the opponents of the motion; disregard the conflicts in the testimony, and indulge, in favor of the opponents of the motion for summary judgment, every intendment reasonably deducible from the evidence. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Smith et al. v. Bolin, 153 Tex. 486, 271 S.W.2d 93; Little v. Employees Security Life Ins. Co., Tex.Civ.App., 343 S.W.2d 517.

Appellant urges reversal of the trial court's judgment based upon the following three points of error:

1. "The trial court erred in rendering summary judgment against appellant, genuine issues of material facts having been raised by the pleadings, the affidavits filed in connection with and in opposition to the motion for summary judgment and the depositions and exhibits thereto taken on discovery."

2. "The trial court erred in rendering summary judgment in favor of appellees, who had the burden of proving that there were no genuine issues of material facts."

3. "The trial court erred in rendering summary judgment in favor of appellees by resolving all doubts as to the existence of a genuine issue of a material fact in favor of appellees without accepting as true all evidence of appellant and allowing it every reasonable inference."

These points of error are nothing more than abstract propositions of law and therefore do not comply with the briefing rules. However, in accordance with our policy of liberal construction of the briefing rules and in an effort to ascertain appellant's real basis of appeal we have carefully reviewed and examined the statements set forth by appellant under the respective points of error. Having done so, we have concluded that appellant's sole and only assault on the trial court's judgment is its complaint with reference to the $1,000,000 loan or investment between the two insurance corporations, as above related. Nowhere in appellant's brief does it contend that issues of fact are raised concerning the merger of the two corporations. In fact, in appellant's answer to appellees' motion for summary judgment it is there stated:

"Plaintiff does not contest the merger as it is a foregone conclusion but Plaintiff does, by this action, contest the use of the corporate money for the Defendants' own purposes."

Appellant's sole contention on appeal seems to be contained in this statement in appellant's brief:

"Basically, Appellant complains that it was a Texas Reserve stockholder that paid its own money for the stock it holds, while Appellees put themselves into office as Directors and officers of Texas Reserve Life Insurance Company and simultaneously therewith used One Million Dollars ($1,000,000.00) of the company's funds out of its reserves for their own benefit and in furtherance of their scheme of acquisition."

In its statement under its Point One appellant, after setting forth general propositions of law relating to review of summary judgments, says that "directors and officers are not permitted to appropriate the money or property of the corporation to or

for their resulting benefit", and "Here it cannot and has not been denied that the Appellees Childre used the money of Texas Reserve Life Insurance Company by making a loan for the use and benefit of their wholly controlled alter ego, Big "D" Development Corporation as shown by D. A. Childre's deposition, Exhibit P(1), p. 9, wherein it is stated: 'H. Thad Childre and D. A. Childre, brothers of Dallas, Texas, own approximately 64% of the units of the Voting Trust Agreement of the Shareholders of Big "D" Development Corporation, thereby having voting control thereof.' "

■ Appellant's statement that Big "D" Development Corporation is the alter ego of the Childre brothers finds no support in the record before us. The undisputed testimony reveals that D. A. Childre was president of the company and that as such president and chief executive officer he made the main business decisions, subject to the Board of Directors' approval. It was further testified that the actions and conduct of Childre were subject to the directors' approval, at all times, in writing and with their signatures attached. It was testified that all business procedures of the corporation were presented to the board or through the executive committee of the board first, and then at the full board meeting. The copies of the minutes of the Big "D" Development Corporation reveal that the Board of Directors and the executive committee functioned on numerous occasions. To establish the alter ego doctrine it is necessary to show that the stockholders disregarded the entity of the corporation thereby making it a mere conduit for the transaction of their own private business and that the separate individualities of the corporation and its stockholders in fact cease to exist. Sefton v. San Diego Trust & Savings Bank (Calif. Appeals), 106 P.2d 974, 984; Superior Coal Co v. Department of Finance, 377 Ill. 282, 36 N.E.2d 354; Gardner v. Rutherford, 57 Cal.App.2d 874, 136 P.2d 48.

■ The mere fact that the Childre brothers owned or controlled a majority interest in the corporations involved here does not ceate an issue of fact as to the alter ego theory or allegation.

■ We find no evidence in the record to support appellant's allegation that corporate funds were used by D. A. Childre personally to the detriment or loss of any stockholder. The record reveals that the corporation assumed $180,000 of personal debts of D. A. Childre in consideration of his transfer to the corporation of 32,727 shares of the common stock of Great Southwest Life Insurance Company, which was shown to have a value of $5.50 per share. This transaction is reflected by the minutes of the corporation and we find no evidence to indicate a disregard for the corporate existence of Big "D" Development Corporation. We have examined Pages 9–10 of Exhibit P(1), referred to by appellant in its statement under Point One, and find nothing contained therein which would amount to undeniable proof that Childre personally used money of Texas Reserve Life Insurance Company in any illegal fashion. The mere fact that Childre and his brother owned approximately 64 per cent of the units of the voting trust agreement of the shareholders of Big "D" Development Corporation, thereby giving them voting control thereof, is not, in itself, illegal or fraudulent. Manney himself was cross-examined at great length concerning any untrue statement contained in the exhibit referred to but could not state that he knew that any were untrue.

The correct rule of law applicable to the controlling point of this appeal is found in 14 Tex.Jur.2d, § 228, p. 344, as follows:

"A transaction is not necessarily void because made between two corporations having the same directorate, but such a transaction is subject to the scrutiny of the courts in the interests of the shareholders of both corporations, and may be set aside if unfair in any respect,

particularly where the personal interests of the directors are enhanced at the expense of the shareholders. But if it should appear, on investigation, that the transaction is fair and that there has been no abuse of the trust relation, the transaction will be permitted to stand."

■ The key phrase of this rule is "at the expense of the shareholders" and this phrase or similar ones such as "damage or harm to the shareholders" or "loss to the shareholders" are liberally sprinkled throughout the authorities dealing with this subject. Indeed, the *sine qua non* of any stockholder's derivative action is the demonstration by probative evidence that the minority stockholders have suffered loss or damage by virtue of the alleged wrongful or fraudulent act on the part of other stockholders or directors of the corporation. The matter is classically illustrated in one of the cases relied upon by appellant, Milam v. Cooper Co., Inc., Tex.Civ. App., 258 S.W.2d 953, in which Chief Justice McDonald of the Waco Court of Civil Appeals makes an exhaustive review of the applicable authority relating to the relationship of officers and directors of a corporation and their dealings with the stock and other assets of the corporation in such a manner as to enrich themselves to the detriment of other stockholders. In that case there was ample evidence that an officer of the corporation wrongfully diverted funds of the corporation for his own benefit to the detriment of the remaining stockholders.

We see no parallel with that situation in the instant case. The facts presented to the trial court were undisputed. Texas Reserve Life Insurance Company made an investment of its funds in a bond issued by Big "D" Development Corporation, a solvent company, which had not defaulted in the payment of any debt within five years next preceding the investment. Art. 3.39 pt. I, Subdivision C, Texas Insurance Code, V.A.T.S., which governs such companies as Texas Reserve Life Insurance Company,

specifically provides for such an investment in that:

"It may invest its capital, surplus and contingency funds over and above the amount of its policy reserves in the following securities:

"1. Capital Stock, Bonds, and other Obligations of Corporations.

"The capital stock, bonds, bills of exchange, or other commercial notes or bills and securities of any solvent corporation which has not defaulted in the payment of any debt within five (5) years next preceding such investment, * * *."

Upon authority of this statute the Insurance Commissioner of the State of Texas considered the investment a legal one in that he considered same in approving the merger of the two corporations.

The balance sheet of Big "D" Development Corporation, the correctness of which is nowhere placed in dispute, demonstrates such corporation to have a net worth as of June 30, 1964, at the end of the month in which the investment in its bond was made by Texas Reserve Life Insurance Company, of $3,437,452.71. The bond bears interest at the rate of 5½ per cent per annum whereas the record demonstrates that the assets converted to cash in order to purchase the bond had a composite yield of a lesser amount.

The bond is still a valid and outstanding obligation and has not been defaulted. In this state of the record appellant has completely failed to demonstrate by the presentation of any evidence of probative value damage to Texas Reserve Life Insurance Company or a profit made by the appellees personally not enjoyed by all of the stockholders of Texas Reserve Life Insurance Company. The loan of money to Big "D" Development Corporation does not constitute a profit to such corporation or any of its shareholders. The money so loaned must be repaid and there is nothing in this

record to indicate that the same will not be repaid upon due date. The obligation to repay the money includes interest and therefore it is an expense to Big "D" Development Corporation and a profit to Texas Reserve Life Insurance Company which made the investment. The former stockholders of Texas Reserve Life Insurance Company still hold their interest by virtue of their stock in Great Southwest Life Insurance Company. Whether Big "D" Development Corporation makes a profit out of the purchase of the stock is contingent upon several things. This corporation paid the approximate market price for the stock at the time of the foreclosure at which it purchased the shares of Texas Reserve Life Insurance Company. Its profit or loss will depend upon the effect of the merger of the two corporations and the operations of the companies following such merger. These factors may have an effect upon the market price of the stock. If the stock purchased by Big "D" Development Corporation increases in value as a result of these factors the stock owned by the minority stockholders will increase in value. This demonstrates the fact that no special damage can flow to the minority stockholders of Texas Reserve Life Insurance Company which will be unique to them and no profit can be realized by the majority stockholders which will not also be realized by the minority stockholders.

In this connection we find it quite significant that Mr. Manney, president of appellant corporation, testified concerning the stock he held, as follows:

"Q. And you would be willing to sell your stock for whatever you have got in it, would you?

"A. No, sir.

"Q. You wouldn't?

"A. No."

Thus appellant, by its own testimony, has indicated there has been no damage to the shares owned by it.

■ We have concluded, after careful review of the entire record, that appellant has completely failed to demonstrate by evidence of probative force an issue or issues which should have been presented to the jury or a trier of fact concerning the allegations made relating to the investment of the $1,000,000 and which forms the complete basis of this appeal.

■ Under its second and third points appellant attempts to set forth fifteen alleged issues of fact which should have been submitted by the court to a trier of fact. We have carefully examined each of these alleged issues of fact and find that they are either completely unsupported by competent evidence or they amount to nothing more than issues of law and therefore not properly issues to be submitted to a jury. All of the alleged points go to the question of the validity of the $1,000,000 investment and what we have heretofore said relating to the question is sufficient to dispose of these questions. It is sufficient to say, in summary, that since the investment was authorized by statute, the $1,000,000 became the property of Big "D" Development Corporation. This corporation owns the money and the purposes for which it was used became a matter for determination of the management of the Big "D" Development Corporation. If any of these uses were damaging to the shareholders of Texas Reserve Life Insurance Company then such would be a proper subject for inquiry in this litigation. However, no injury or damage has been shown and until some default in the repayment of the investment has been shown it can hardly be said that there has been damage to appellant.

■ The careful trial judge who reviewed all of the matters before him in considering the motion for summary judgment correctly arrived at the conclusion that if this case had been submitted to him and to a jury a peremptory instruction would have been proper. Such being true, the motion was properly sustained. Hurley v. Knox, Tex.Civ.App., 244 S.W.2d 557; Fow-

ler v. Texas Employers' Ins. Ass'n, Tex.Civ. App., 237 S.W.2d 373, wr. ref.

Finding no merit in any of appellant's points of error the same are overruled and the judgment of the trial court is affirmed.

Affirmed.