**SEBASTOPOL MEAT COMPANY, Inc.,
and Robert W. Singleton,
Petitioners,**

v.

**SECRETARY OF AGRICULTURE,
Respondent.**

No. 24261.

United States Court of Appeals,
Ninth Circuit.

March 25, 1971.

Dal Poggetto & Jess, Santa Rosa, Cal.,
for petitioners.

William D. Ruckelshaus, Asst. Atty.
Gen., Charles W. Bucy, Asst. Gen. Coun-
sel, Alan S. Rosenthal and Garrett N.
Wyss, Attys., for Dept. of Justice, L.
Patrick Gray, III, Washington, D. C.,
for respondent.

Before HAMLEY, BROWNING and
DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Sebastopol Meat Company, Inc. (Se-
bastopol) and Robert W. Singleton peti-
tion this court to set aside a cease and
desist order of the Secretary of the De-
partment of Agriculture (Secretary), is-
sued under the authority of the Packers
and Stockyards Act (Act), 7 U.S.C. §§
181 et seq.

In a complaint initiated by the De-
partment, Sebastopol and Singleton were
charged with failing to pay, when due
and in full, for livestock purchased in
commerce, in violation of federal regula-
tions (9 C.F.R. § 201.43(b)), and with
thereby engaging in an unfair and de-
ceptive practice in commerce, contrary
to 7 U.S.C. § 192(a). A cease and de-
sist order issued against Sebastopol, its
officers, directors, agents and employees
and against Singleton as an individual
and in any corporate capacity.

As the case reaches us, the only issue
for our consideration is the propriety of
that part of the cease and desist order
which runs against Singleton as an indi-
vidual, as distinguished from Singleton
as an officer of the corporation.

As to this phase of the case, the Judi-
cial Officer made the following findings
and conclusions:

"Respondent Singleton is president
of respondent corporation and his
wife is its vice-president. About June
5, 1967, respondent Sebastopol was au-
thorized to issue 2,500 shares of its
stock to respondent Singleton and his
wife. No authorization exists for is-
suance of its stock to any other per-
son. Respondent Singleton is, and at
all times material herein was, in com-
plete charge of the operations of the
corporation—formulating, directing
and controlling its policies, practices
and activities, including buying and

paying for livestock for its packer operations, and determining when, where and how such purchases and payments would be made. * * *

"Respondent Singleton was registered under the act as a dealer to buy and sell livestock in commerce for his own account from 1961 until July 24, 1967, when he became registered as a dealer (and is now so registered) buying livestock for slaughter purposes only for respondent Sebastopol. * *

"Singleton was named in his individual capacity as a respondent, he and his wife own the corporation and he is in complete charge of all operations of the corporation. * * * Singleton is the *alter ego* of the corporation and we think that as an individual he should be proscribed from performing the violations found herein. 'Where the corporate fiction is merely an *alter ego* or business conduit of an individual, it may be disregarded in serving the just determination of an action.' 18 Am.Jur.2d p. 526, citing Mayo v. Pioneer Bank and Trust Company, 274 F.2d 320 (5th Cir. 1960), cert. denied 362 U.S. 962, [80 S.Ct. 878, 4 L.Ed.2d 877.]"

The only express provision in the Act identifying the persons against whom a cease and desist order of this kind may issue is 7 U.S.C. § 193(b), quoted in the margin.[1] The only person there mentioned is a "packer." Insofar as the activity here in question is concerned, the Act defines the term "packer" to mean "any person engaged in the business * * * of buying livestock in commerce for purposes of slaughter. * * *" 7

U.S.C. § 191(a). It can be argued that the term "business," used in this context, denotes activity engaged in on one's own account, for profit, as distinguished from activity for the account of another, with regard to which the only compensation is a wage or salary. It can also be argued that the agency so construed the term because Singleton was not required to have a license as a "packer." We need not decide these questions, however, because the Secretary did not issue the cease and desist order against Singleton as an individual (as distinguished from Singleton as an officer of the corporation) on the ground that he was, apart from his function as an officer of Sebastopol, engaged in the business of buying livestock in commerce for slaughter on his own account and for profit, and therefore a "packer." Nor does the Secretary, in this court, defend the cease and desist order against Singleton as an individual, on this ground.[2] Instead, as is shown by the findings quoted above, he relied on the doctrine of *alter ego*.

Singleton argues that the doctrine of *alter ego* was improperly applied and that therefore the order should be modified to delete the provisions making it run against him individually. He contends that in the absence of a showing of a fraudulent or inequitable result the corporate entity of Sebastopol should not be disregarded. In so arguing, Singleton relies on California cases which say that fraud or an inequitable result is required as a predicate for application of the concept of *alter ego*. See Quader-Kino A. G. v. Nebenzal, 1950, 35 Cal.2d 287, 296, 217 P.2d 650, 656; Norins

---

[1]. "(b) If, after such hearing, the Secretary finds that the packer has violated or is violating any provisions of sections 191–195 of this title covered by the charges, he shall make a report in writing in which he shall state his findings as to the facts, and shall issue and cause to be served on the packer an order requiring such packer to cease and desist from continuing such violation. The testimony taken at the hearing shall be reduced to writing and filed in the records of the Department of Agriculture."

[2]. The Judicial Officer made a finding of fact which might be argued to preclude application of such a theory. The Secretary found that, during the period in question, Singleton was a registered dealer buying livestock for slaughter purposes only for Sebastopol. The term "dealer" is defined in 7 U.S.C. § 201(d) in a manner which clearly differentiates such a person from a "packer," defined in 7 U.S.C. § 191(a).

Realty Co. v. Consolidated A. & T. G. Co., 1947, 80 Cal.App.2d 879, 182 P.2d 593, and Gardner v. Rutherford, 1943, 57 Cal.App.2d 874, 136 P.2d 48.

We do not think that state law limitations on the *alter ego* theory or doctrine are necessarily controlling in determining the permitted scope of remedial orders under federal regulatory statutes. See generally Goodman v. F. T. C., 9 Cir., 1957, 244 F.2d 584, 590–591. As we there said:

"However, when interpreting a statute the aim of which is to regulate interstate commerce and to control and outroot some evil practices in it, the courts are not concerned with the refinements of common-law definitions, when they endeavor to ascertain the power of any agency to which the Congress has entrusted the regulation of the business activity or the enforcement of standards it has established."

Sebastopol is a creation of the state, and the state courts can undoubtedly define and limit the state's *alter ego* doctrine in applying the state's laws to Sebastopol. The doctrine of *alter ego* is usually invoked in state courts in private litigation, for the purpose of defeating the normal rule of state law that the corporation shields its owners from liability for its obligations. Since the shield was deliberately created by the state to encourage the formation and use of capital, it is not surprising that state courts impose rather stringent limitations upon a doctrine that is designed to remove the shield.

It does not follow that state limitations on the doctrine must be accepted in the application of federal regulatory statutes. In the case before us, the purpose of the cease and desist order is to insure that the regulation will not be thwarted by continued unlawful conduct. It does not impose personal liability upon Singleton for past acts. We think it quite unrealistic to say, in view of the findings that we have quoted, that Sebastopol did the acts charged but that Singleton did not. Everything that Sebastopol did, Singleton did, because Sebastopol, for all practical purposes, was Singleton; he was the substance; Sebastopol was the shadow. The phrase *"alter ego"* is an apt description of the Sebastopol-Singleton relationship. But there is no magic in the phrase; it is the substance that matters. We decline to hold that the Secretary can order only the shadow to cease and desist. To do so would be to reject fact in favor of fiction.

The only case authority dealing with the power of the Secretary, under this statute, to issue a cease and desist order against an individual on the basis of acts done by a corporation, is Bruhn's Freezer Meats of Chicago, Inc., et al. v. United States Dept. of Agriculture, 8 Cir., 1971, 438 F.2d 1332. That case differs in its facts, but is authority for the power of the Secretary to issue such an order. There are many cases that stand for the general principle that the mere form of a business organization is insufficient to shield the practices sought to be prohibited from the reach of a federal regulatory agency. *See, e. g.,* Electric Bond & Share Co. v. S. E. C., 1938, 303 U.S. 419, 440, 58 S.Ct. 678, 82 L.Ed. 936; F. T. C. v. Standard Education Society, 1937, 302 U.S. 112, 119–120, 58 S.Ct. 113, 82 L.Ed. 141; H. P. Lambert Co. v. Secretary of Treasury, 1 Cir., 1965, 354 F. 2d 819, 822; Joseph A. Kaplan & Sons, Inc. v. F. T. C., D.C.Cir., 1965, 121 U.S. App.D.C. 1, 347 F.2d 785, 787, n. 4; South Carolina Generating Co. v. F. P. C., 4 Cir., 1958, 261 F.2d 915, 920; Corn Products Refining Co. v. Benson, 2 Cir., 1956, 232 F.2d 554, 565; Keystone Mining Co. v. Gray, 3 Cir., 1941, 120 F.2d 1, 6; Alabama Power Co. v. McNinch, D.C. Cir., 1938, 68 App.D.C. 132, 94 F.2d 601, 618; and our own decisions in Tractor Training Service v. F. T. C., 9 Cir., 1955, 227 F.2d 420, 425; Goodman v. F. T. C., 9 Cir., 1957, 244 F.2d 584, 593–594.

It is true that none of these cases, except *Bruhn's Freezer Meats, supra,* deals with the Act that is here applicable. It

is also true that it would be possible to distinguish each of them, on its facts, from the facts of this case. Nevertheless, we think that the principle that they announce is applicable here. It is obvious to us that a cease and desist order directed to both Sebastopol and Singleton is far more likely to assure future compliance with the Act than one directed to Sebastopol alone. It is equally obvious that in reality it was Singleton who committed the violations.

The petition is denied.